# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Pa M.

                                        Civ. No. 20-741 (BRT)

              Plaintiff,

v.                                      **MEMORANDUM**
                                        **OPINION AND ORDER**

Kilolo Kijakazi,
Acting Commissioner of SSA,

              Defendant.

---

Stephanie Ann Christel, Esq., Charles J. Lloyd, Esq., and Paul A. Livgard, Esq., Livgard & Lloyd PLLC, counsel for Plaintiff.

Linda H. Green, Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 21, 23.) For the reasons stated below, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

## BACKGROUND

Plaintiff is originally from Laos. Plaintiff fled from Laos due to "unthinkable" trauma during the Vietnam war. (Doc. No. 22, Pl. Mem. 4.) She escaped to Thailand and

eventually arrived in the United States. The records recite ongoing problems relating to her traumatic experiences, including reports of "nightmares, bad dreams about war and running and hiding from the Communist solders." (*See, e.g.*, Tr. 407.)[1] She has no formal education and cannot read or write in any language. (Tr. 50, 104–05, 121–22, 256.)

Sometime after arrival to the United States in 1989, she started working entry level jobs. (Tr. 412.) She worked as a housekeeper for a hotel for fifteen years before leaving this position due to increased pain resulting from reported falls on November 30, 2016. (Tr. 54, 105, 213, 220, 257–58.) Plaintiff also previously worked as a janitor, tree cutter, and factory/warehouse worker. (Tr. 114, 131, 258.) On July 25, 2017, Plaintiff filed initial applications for disability insurance benefits and supplemental security income. (Tr. 213.) In her application, Plaintiff alleged a disability onset date of November 30, 2016, due to physical impairments including back, knee, shoulder, and hip pain as well as hyperlipidemia and arthritis. (Tr. 213, 257.) No mental impairments were alleged in the initial application, but she filed a change in condition as of August 2017 to include major depression, mood disorder, and PTSD. (Tr. 260, 292.) She asserts that her chronic pain and subsequent mental illness made her unable to work and she has not worked in any capacity since November 30, 2016. (Tr. 257.) Plaintiff also asserts an inability to participate in daily activities. (Tr. 296.)

---

[1]     Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 20.)

An Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application on June 11, 2019. (Tr. 178.) In his decision dated July 3, 2019, the ALJ denied Plaintiff's application and concluded Plaintiff was not disabled within the meaning of the Social Security Act ("SSA"), finding she could perform past relevant work ("PRW"). (Tr. 17, 35.) The ALJ proceeded through the five-step evaluation process provided in the Social Security regulations.[2]

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period since her alleged onset date of November 30, 2016. (Tr. 23.) At step two, the ALJ found that Plaintiff had the following severe impairments: lower back pain secondary to facet arthropathy; bilateral knee patellofemoral syndrome; major depressive disorder ("MDD"); anxiety disorder; Post Traumatic Stress Disorder ("PTSD"); and personality disorder. (Tr. 23.) At step three, the ALJ determined that Plaintiff's impairments or combination of impairments did not meet the criteria of any Social Security listed impairments. (Tr. 23.)

---

[2]     At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of her past work. And at step five, the ALJ determines whether the claimant can do any other work considering her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(f).

Before reaching step four, the ALJ determined Plaintiff's residual functional capacity ("RFC").[3] The ALJ found that Plaintiff had the RFC to perform light work with the following additional limitations:

> The claimant can lift 20 pounds occasionally and 10 pounds frequently; sit 6 hours out of an 8-hour day; stand and/or walk for 6 hours out of an 8-hour day; and push and pull as much as can lift and carry. In addition, the claimant is limited to occasional climbing of ramps and stairs; never climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping; frequent kneeling, crouching and crawling; simple, routine and repetitive tasks but not at a production rate pace, such as that found in assembly-line work; brief, superficial and occasional interactions with supervisors, co-workers and the public; able to tolerate occasional changes in a routine work setting; and work instructions are visually demonstrated.

(Tr. 226–27.) At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a housekeeper as it does not require "the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 34.) Because the ALJ concluded Plaintiff could perform past relevant work, the ALJ determined Plaintiff not to be disabled, which concluded the analysis under the regulations. (Tr. 37.)

---

[3]    A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quotations omitted); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most [she] can still do despite [her] limitations"). The ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted).

## ANALYSIS

### I.    Standard of Review

The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision is reviewed "for legal error and to ensure that the factual findings are supported by substantial evidence" in the record as a whole. *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard "allows for

the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal).

## II.   Analysis of the ALJ's Decision

On appeal, Plaintiff argues that the ALJ erred in considering the credibility of Plaintiff's subjective complaints and in weighing medical evidence. (Doc. No. 22, Pl.'s Mem. 3.) Specifically, Plaintiff asserts that the ALJ misrepresented the facts and improperly discounted her subjective complaints. (Pl.'s Mem. 21–25.) Further, Plaintiff contends that the weight given to Plaintiff's treating physician, Dr. Mary Yee, was not supported and the ALJ should have given Dr. Yee's opinions more weight than the state agency consultants, Dr. Cliff Phibbs and Dr. Kerri Chung, and psychologist Dr. Karayusuf. (Pl.'s Mem. 15.) Plaintiff argues this error resulted in an RFC based on state agency medical consultant opinions not supported by substantial evidence. (Pl.'s Mem. 26–28.) For these reasons, Plaintiff believes the decision should be reversed and benefits awarded.

## A. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.

Plaintiff challenges the ALJ's credibility analysis, arguing that the ALJ improperly assessed the Plaintiff's subjective complaints of symptoms regarding pain, mental restrictions, and walking ability and misrepresented the facts in the record contrary to the standards set forth in SSR 16-3p when he determined that such complaints were inconsistent with the record as a whole. (Pl.'s Mem. 15–19, 23–25.)

The Eight Circuit's decision in *Polaski v. Hecker* identifies factors that the ALJ must consider in evaluating a claimant's subjective complaints.[4] *Polaski v. Hecker*, 739 F.2d 1320, 1322 (8th Cir. 1984). In addition to objective medical evidence, the ALJ must consider "the claimant's prior work record, and observations made by third parties and treating and examining physicians relating to such matters as: 1. the claimant's daily activities; 2. the duration, frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage, effectiveness and side effects of medication; [and] 5. functional restrictions." *Id.* The ALJ is not required to discuss each factor individually or in depth. *See Dunahoo v. Apfel*, 214 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to

---

[4]     These factors are codified at both 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. § 416.929(c)(3). The factors include (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

its judgment even if every factor is not discussed in depth."); *see also Hanson v. Colvin*, No. 12-cv-961 (TNL), 2013 WL 4811067, at *16 (D. Minn. Sept. 9, 2013) ("While the ALJ must consider the above factors, the ALJ need not discuss each one individually . . . ."). As a general matter, credibility determinations "are the province of the ALJ," and the Court will defer to the ALJ's decision "as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

Plaintiff described significant pain in her low back and knees that progressed to numbness and weakness in addition to mental impairments including depression, PTSD, and hallucinations. (Tr. 27.) Using a two-step analysis, the ALJ found that the impairments as described by Plaintiff could reasonably cause the alleged symptoms, but the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 27–28.)

The ALJ properly evaluated Plaintiff's credibility and supported his determination with substantial evidence in the record. The ALJ expressly noted that his credibility determination was made based on the requirements of 20 C.F.R. § 404.1529, which includes the *Polaski* factors. (Tr. 20–21.) Specifically, the ALJ considered and pointed out inconsistencies relating to objective clinical findings and treatment history from Plaintiff's physical and mental examinations, considered her response to medication and treatment, her daily activities, as well as lack of more intensive treatment and lack of compliance with conservative treatment. (Tr. 20–26.)

8

The ALJ thoroughly considered Plaintiff's history of back pain and knee pain including symptoms of weakness and numbness. (Tr. 27.) The ALJ determined that Plaintiff's objective medical exams did not align with her subjective complaints based not only on Dr. Yee's records but also specialist notes and other materials in the record. (Tr. 28.) For example, Plaintiff reported "bone to bone" knee contact and the requirement of many surgeries. (Tr. 28.) The medical record, however, includes an x-ray showing only mild degenerative changes. (Tr. 28.) Plaintiff also reported the need for surgery; however, Summit Orthopedic advised that she was not a candidate for surgery, and the only surgery on the record was a hysterectomy in 2015. (Tr. 454, 506, 639.)

Examinations "consistently reflected generally normal findings, including normal gait, coordination, strength, tone, and power." (Tr. 22, 446, 448, 534, 570, 575, 596.) Pain was regularly described as stable and at times no pain was recorded on visits. (Tr. 631, 651.) In two visits, in 2017 and 2018, providers found Plaintiff's symptoms likely secondary to poor effort. (Tr. 438, 444.) The ALJ found that although Plaintiff subjectively reported pain and weakness, musculoskeletal and neurology exams did not always support that. (Tr. 670–71, 681, 719.) The ALJ explained that symptoms of Plaintiff's reported severity would typically be supported by "more objective data such as MRI or x-ray evidence." (Tr. 34.)

Plaintiff also testified to always using a cane or walker. There are notations that state that Plaintiff walked with a cane at baseline and had an antalgic gait; however, providers inconsistently reported about this. (Tr. 446, 448, 498, 500–01, 742, 745, 758, 778.) Voos mental health clinic reported cane usage with more consistency but noted a

slow gait and only once recorded a limp. (Tr. 746, 748–54, 757–61, 764, 782.) While providers inconsistently reported cane usage, the state agency consultants opined that "MER does not support the medical requirement of a hand-held assistive device for ambulation." (Tr. 92, 128.) Also, while Plaintiff reported multiple falls, according to the initial chiropractic intake form on December 20, 2017, there were no recent falls reported. (Tr. 452.)

The ALJ also observed that Plaintiff consistently saw improvement in symptoms from very conservative care options including Tylenol and Motrin, cortisone injections, chiropractic care, and non-medicinal remedies such as soaking baths. (Tr. 470, 472, 672, 683, 748, 761.) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). Plaintiff reported improvement not only with medicinal remedies but also with light exercise and heat. (Tr. 437, 782.) There are some instances where Plaintiff's pain worsened at specific visits; however, overall, symptoms were stable or improving without more extensive intervention. (Tr. 378, 502, 574, 682, 756–57.) As in *Julin v. Colvin*, worsening symptoms at some visits does not negate that the overall evidence shows management with medication. 826 F.3d 1082, 1087 (8th Cir. 2016) (noting that effective medication supported finding that subjective complaints not fully credible based off all evidence). The ALJ correctly determined that management of Plaintiff's symptoms with conservative care weighs against Plaintiff's subjective complaints of pain.

Not only were Plaintiff's symptoms reportedly stable or improving with minimal, conservative care, but there were also instances of medical non-compliance cited by the ALJ. "Inability to follow a recommended course of treatment also weighs against her credibility." *Julin*, 826 F.3d at 1087. For example, Summit Orthopedics offered and suggested additional cortisone injections, but Plaintiff elected not to receive them even after stating that the injections provided some relief. (Tr. 55–56.) Physical therapy was also recommended; but Plaintiff only participated in limited physical therapy and stated that she "only wanted to take medication." (Tr. 365.) In addition, Plaintiff stated she did not want to see any more specialists when Dr. Yee suggested a referral to neurology on reports of weakness. (Tr. 680, 682.) Although Plaintiff cites financial reasons for non-compliance, there is nothing in the record to suggest these concerns made Plaintiff unable to receive care.[5] The ALJ correctly weighed non-compliance when determining Plaintiff's credibility.

---

[5]     Inability to afford care is an explanation for non-compliance. *Ricketts v. Sec'y of Health & Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990) (citing *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984)). However, the record reflects that non-compliance was not due to financial strain. Plaintiff alleged not wanting to see anymore specialists not due to cost but because she "did not want to see any specialists." (Tr. 680.) Also, contrary to Plaintiff's assertion now that she did not want injections because they did not help, she testified that they provided relief for a period of time without any side effects. (Tr. 55, 639.) Additionally, there were calls from the insurance company that Plaintiff claims were for bill collection; but there is also some evidence in the record to suggest it was for clarification about the visits for continued coverage. (Tr. 683–84.) Plaintiff had insurance from the date of onset to present time. (Tr. 21.) And when there was an issue with insurance, the record reflects that Dr. Yee prescribed a different medication, which indicates that the providers were willing to work with Plaintiff for insurance coverage. (Tr. 612.) Her insurance also offered free medical transportation. (Tr. 621.)

The ALJ also observed that Plaintiff's mental health symptoms are not consistent with the record. (Tr. 22–23.) For instance, the ALJ noted that Plaintiff's reports of confusion, insomnia, and inability to concentrate are not objectively reflected in the record, and the record instead reflects that Plaintiff was awake, alert, and "oriented to person, place, and time." (Tr. 31, 633, 641, 651, 660, 665.) The record also reflects that Plaintiff was observed playing board games at group therapy; but she testified she could not concentrate or remember things. (Tr. 66, 768, 773, 786, 789.) In her examination with Dr. Karayusuf on November 9, 2017, Plaintiff could not add 1 + 1. (Tr. 431.) This led to some concerns with medicinal non-compliance.[6] Dr. Karayusuf noted, however, virtually no effort on examination. (Tr. 431.)

Plaintiff's reports of hallucinations were also inconsistent. For example, on December 12, 2018, the notes from Natalis Counseling Psychology state improvement regarding hallucinations and the examination was otherwise normal. On February 5, 2019, Plaintiff reported auditory and visual hallucinations. (Tr. 560, 564, 567.) However, Plaintiff also stated she had improvement with hallucinations when taking Abilify. (Tr. 564, 567.) Plaintiff has taken the same or similar medication for these mental health problems for a significant amount of time and reported improvement. (Tr. 350.) The ALJ correctly noted that the record indicates improvement or no change in Plaintiff's mental health with continued therapy and medication. (Tr. 24, 722, 733, 735, 762.) This Court

---

[6]     Plaintiff reported compliance with medication; however, the provider at Natalis Counseling Psychology, Karien Wilson, PA, noted a potential lack of compliance. (Tr. 561.)

12

concludes that the inconsistencies in reporting various mental health symptoms and the lack of additional, more severe treatment supports the ALJ's credibility finding regarding Plaintiff's mental health symptoms.

In addition, the ALJ analyzed Plaintiff's daily activities extensively. Courts need to examine daily activities in the context of credibility. *Whitman v. Colvin*, 762 F.3d 701, 705 (8th Cir. 2014) (holding that because there was nothing objective to support the severely limited daily activities and even if the daily activities were that limited, the medical evidence did not show it was due to claimant's diagnosis and thus was not credible).

Here, Plaintiff testified that her family members do all the household chores and that she does very little, resulting in an increase of daily personal care assistant ("PCA") hours from 1.75 to 3 in 2019. However, the ALJ observed inadequate support for that level of restriction. (Tr. 32, 555, 558.) Plaintiff also testified that she has not gone to the grocery store since 2016. However, on September 27, 2017, Plaintiff reported driving to the grocery store when needed and spending up to two and a half hours shopping, once a week. (Tr. 62, 322.) In that same report, Plaintiff asserted that she could walk less than half a block before needing to take a break. (Tr. 324.) And Plaintiff stated she was able to stand only for two to three minutes at a time. (Tr. 60, 63–64.) Plaintiff reported inability to walk at all, but also reported walking around the house at times and walking with her husband. In addition, the record reflects Plaintiff did at times participate in light exercise and stretching in group therapy for pain management. (Tr. 649, 748, 777, 781–82.) On December 22, 2017, Plaintiff even listed "outdoors" and "walking" as hobbies on a

Natalis Counseling Psychology form. (Tr. 597.) Further, Dr. Yee prescribed a walker for

Plaintiff on December 6, 2018, due to increased weakness when "walking quickly,"

which contradicts Plaintiff's testimony that she cannot walk very much or without

support. (Tr. 59, 693.) Therefore, after review of the record, the Court concludes that

while Plaintiff reported severe restrictions in daily activities, the record reflects

inconsistencies with Plaintiff's reports. Overall, the record supports the ALJ finding

Plaintiff's claims less credible.

Regarding the remainder of the *Polaski* factors, Plaintiff argues that the ALJ failed

to consider the duration, frequency, and intensity of Plaintiff's condition, any

precipitating and aggravating factors, and any functional restrictions that Plaintiff

experiences in daily life. However, as explained above, the ALJ is not required to

explicitly address each *Polaski* factor in the credibility finding. *Milam v. Colvin*, 797 F.3d

978, 984 (8th Cir. 2015) (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.

2004)). Because the ALJ reviewed and discussed substantial evidence in the record when

considering Plaintiff's subjective complaints, and because the ALJ gave sufficient

reasons for discounting Plaintiff's complaints considering the *Polanski* factors, this Court

must defer to the ALJ's credibility determination. *See Gonzales v. Barnhart*, 465 F.3d

890, 895–96 (8th Cir. 2006).

**B.  The ALJ's RFC determination is supported.**

Plaintiff argues that the ALJ improperly discounted the opinion of Plaintiff's

treating physician Dr. Mary Yee, which included a recommendation that Plaintiff be

limited to sedentary restrictions, including only walking/standing for two out of eight

14

hours a day. (Pl's. Mem. 25–26.) Plaintiff also argues that had more weight been given to Dr. Yee and Plaintiff's subjective complaints, there would have been a sedentary RFC and a finding that Plaintiff is disabled. (Pl.'s Mem. 15–16.) Although Dr. Yee is a treating physician, "an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a plaintiff's] medical sources." 20 C.F.R. § 404.1520c.[7] The ALJ must instead consider the supportability and consistency of medical opinions and may consider the relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c; *see also Fatuma A. v. Saul*, No. 19-cv-3160 (WMW/LIB), 2021 WL 616522, at *5 (D. Minn. Jan. 26, 2021) (holding that the only two factors the ALJ must discuss are supportability and consistency and may consider others but is not required to do so).

Plaintiff argues that Dr. Yee's opinion should have been granted controlling weight as the treating physician. As just explained, that standard does not apply to the circumstances of this case. 20 C.F.R. § 404.1520c; *see also Coffman v. Comm'r Soc. Sec. Admin.*, No 2:19-04208-CV-RK, 2020 WL 7033962, at *2 (W.D. Mo. Nov. 30, 2020) (holding that this argument fails due to new regulations). Here, the SSA regulations require that the ALJ must explain "how the two most important factors, supportability and consistency, were considered." 20 C.F.R. § 404.1520c(b)(2).

---

[7]    Since Plaintiff's claim was filed after March 27, 2017, § 404.1527 does not apply because § 404.1520c supersedes any previous statutory requirements. 20 C.F.R. § 404.1520c.

In his decision, the ALJ explained that he provided less weight to Dr. Yee's opinion because, although it matched Plaintiff's subjective complaints (which were internally inconsistent and inconsistent with the record evidence), it was not supported by objective medical evidence. (Tr. 34.) On January 23, 2018, Dr. Yee filled out an RFC determination form where she described both mental and physical impairments for Plaintiff. (Tr. 441–43.) On this form, Dr. Yee indicated that Plaintiff would only be able to stand/walk and sit for two hours out of an eight-hour day, would be off task for 25% of the day, and would have no ability to lift over 10 pounds, along with many postural limitations including the use of a cane for ambulation. (Tr. 441–43.) Additionally, Dr. Yee described Plaintiff as unable to do any daily activities and having no good days. (Tr. 441–43.) Approximately two years later, in a letter to Plaintiff's attorney dated January 3, 2020, Dr. Yee described Plaintiff as unable to work due to knee pain and right sided numbness and weakness without any specific time limitations. (Tr. 7.) Although Dr. Yee noted other health issues Plaintiff experiences, those were not provided as reasons Plaintiff would be unable to work. (Tr. 7.) For instance, Dr. Yee did not note back pain or mental health concerns as limitations to work ability and did not describe the need for a cane or walker to ambulate. (Tr. 7.)

Dr. Yee noted joint pain in both the RFC assessment and the letter to Plaintiff's attorney; however, the level of restriction provided by Dr. Yee based on joint pain is not supported by the objective evidence and the record reflects significant inconsistencies. (Tr. 7, 441–43.) In 2017, Dr. Yee noted that Plaintiff complained of worsening pain and "bone on bone contact" in her knees. (Tr. 54, 370.) But this was not supported by an x-

16

ray taken at that time that showed normal knee joints apart from some mild crepitus. (Tr. 372.) On August 14, 2017, Dr. Yee noted Plaintiff's concern about low back and knee pain, but the same medical record stated Plaintiff had no current pain and her straight leg raises were negative and her strength and reflexes tested normal. (Tr. 426–27.) In addition, a note from Plaintiff's specialist at Summit Orthopedics indicated no change in the lumbar spine from August 21, 2017 to April 13, 2018. (Tr. 444.) Further, in medical visits with Dr. Yee for other ailments, Plaintiff did not report joint pain even when low back pain was listed as a current issue. (Tr. 422, 427, 650–51.) At one visit, the back, shoulder, and head pain was described as only having lasted one week with no mention of knee pain. (Tr. 636–37.) The ALJ correctly examined these inconsistencies between Dr. Yee's opinions and the treatment records regarding joint pain.

The ALJ also examined the treatment Plaintiff received and determined that the conservative treatment plan with positive results contradicted Dr. Yee's opinion that Plaintiff had debilitating joint pain that would result in the movement restrictions she provided or in an inability to work. (Tr. 28.) The record reflects that Plaintiff reported some improvement in both physical and mental symptoms from medicine, injections, non-medicinal remedies, and chiropractic care. (Tr. 683.) Improvement in pain was also described in regular chiropractic notes dated January 3, 2018 to July 11, 2018, with only a few instances of worsening pain which were relieved by treatment. (Tr. 460, 462, 464, 466, 468, 470, 472, 474, 476, 478, 480, 482, 484.)

Plaintiff contends that the ALJ failed to acknowledge Dr. Yee's notes reflecting that Plaintiff had worsening pain and newly developed, disabling weakness and

numbness after the initial application for disability benefits. (Pl.'s Mem. 28.) Dr. Yee

reported weakness as a reason Plaintiff would be unable to work as of January 3, 2020, in

her letter to Plaintiff's attorney. (Tr. 7.) It is evident from the ALJ's decision, however,

that the ALJ considered these notes by Dr. Yee but found no substantial, objective

evidence to support these worsening conditions. (Tr. 33.)[8] Further, Plaintiff saw

improvement in weakness symptoms with limited chiropractic care. (Tr. 682.) The ALJ

did not fail to evaluate Dr. Yee's comments about worsening weakness; instead, the ALJ

stated that "findings were quite limited" with respect to weakness and indicated there was

some doubt about whether the weakness was "secondary to poor effort" as Plaintiff was

found to have normal gait on many occasions and normal strength with negative straight

leg raises. (Tr. 29.)

Plaintiff also argues that the ALJ's "explicit rejection of sedentary level

restrictions—including standing/walking restrictions and use of a walker or cane for

ambulation—is not supported by substantial evidence" and that the need for the walker

"clearly preclude[s] standing and/or walking for 6 hours of an 8-hour day." (Pl. Mem. 16,

---

[8]     For example, Dr. Yee noted weakness in Plaintiff's lower right extremity and
referred Plaintiff to neurology due to concern for stroke on August 5, 2018, while also
indicating normal strength and reflexes. (Tr. 670.) Before the referral to neurology could
be scheduled, additional visit notes and information was needed as Plaintiff's symptoms
alone did not warrant further screening. (Tr. 675.) Plaintiff did receive screening from
neurology but everything came back normal and they advised Plaintiff to take a baby
aspirin, which Plaintiff took once and stopped due to a stomach ache with no further
complications. (Tr. 672–75.) Additionally, during this time of reported weakness,
Plaintiff's mental health provider, Karien Wilson, PA, at Natalis Counseling Psychology
frequently noted "normal gait and stance" and intermittently noted the use of a single
point cane. (Tr. 561, 564, 567, 570, 573, 576, 597, 582, 584, 586, 593.)

18.) Dr. Yee prescribed a walker to Plaintiff after a PCA assessor noted that Plaintiff feels weakness in her right leg when walking fast. (Tr. 691–93.) As stated above, the walker was prescribed based only on Plaintiff's subjective complaints, which the ALJ deemed incredulous as the notes for Plaintiff's general physical examination at that time state she was "well developed, well nourished, [and] in no acute distress," and normal neurology results that note no objective explanation for Plaintiff's weakness. (Tr. 29, 692, 719.) When a treating physician's opinion relies on subjective complaints that are not fully credible, the treating physician's opinion need not be given controlling weight.[9] *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The ALJ correctly utilized this information when examining the supportability of Dr. Yee's opinions. Because Plaintiff's subjective complaints about needing the use of a walker are not supported by medical evidence in the record, and are inconsistent with her medical examinations and findings, the ALJ's decision to not give weight to Dr. Yee's opinion with regard to Plaintiff's need for a walker is supported.

In sum, under the new regulations set forth in 20 C.F.R. § 404.1520c, the weight given to Dr. Yee's opinions by the ALJ is supported. There is substantial evidence in the record, including medical evidence, showing that Dr. Yee's opinion is not supported by the record evidence. And Dr. Yee's opinions are both internally inconsistent and

---

[9]     As noted above, the controlling weight standard does not apply; however, the case law regarding subjective complaints is instructive when determining the supportability of a treating physician's opinion.

inconsistent with other medical opinions. Therefore, this Court affirms the weight given to Dr. Yee's opinions.

### C. The weight given to the state agency consultants is supported by substantial evidence.

The state agency consultants reviewed Plaintiff's record – on August 26, 2017 by Dr. Kerri Chung and on November 27, 2017 by Dr. Cliff Phibbs. (Tr. 95, 128.) Included in the initial review by Dr. Chung were the records from Regions Hospital, West Side Community Service, and claimants work history and functional reports. (Tr. 88.) The second review by Dr. Phibbs included all the previous records and the records from Summit Orthopedics, the consultant exam from Dr. Karayusuf, Life Med PA and additional notes from West Side Community Service. (Tr. 118–20.) Any records after November 27, 2017, were not included in their review.

Plaintiff correctly notes that typically non-examining sources have been provided less weight and even more so if they do not have access to relevant medical records. *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010); *see also McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011). But under the new standards set forth for claims filed after March 27, 2017, the ALJ need not automatically afford more weight to one medical provider or another. 20 C.F.R. § 404.1520c. The ALJ must instead explain the weight given to a medical opinion based on its supportability and consistency with the record. *Id.* Therefore, an ALJ can afford non-examining sources great weight when supported by substantial evidence in the record and when additional records are independently reviewed by the ALJ. *Devante D. K. v. Saul*, Civ. No. 20-423 (BRT), 2021 WL 1140225,

20

at *9 (D. Minn. Mar. 25, 2021). Here, the ALJ extensively reviewed the records obtained after the state agency consultants' opinions were provided and explained how the state agency consultants' opinions were supported and consistent with the objective medical evidence in the record.[10] (Tr. 33.)

Finding the state agency consultants' opinions persuasive, the ALJ noted that their restrictions were "consistent with the course of treatment and objective findings" and that "subsequent evidence did not reflect worsening or need for further restrictions." (Tr. 33.) The ALJ cited a lack of imaging or diagnostic tests as evidence that Plaintiff's condition did not warrant additional restrictions. (Tr. 33, 378, 675, 682, 756.) Further, conservative care without the need for more medical interventions suggests a stable, managed condition. (Tr. 33, 378, 675, 682, 756.) The two state agency consultants' opinions were also consistent with each other. (Tr. 86–96, 117–34.) Because the ALJ adequately explained how the state agency medical consultants' opinions were supported and

---

[10]    Plaintiff cites *Noerper v. Saul*, 964 F.3d 738 (8th Cir. 2020), to support her argument that Dr. Phibbs' opinion does not provide substantial evidence for the ALJ's RFC determination regarding her standing/walking limitation because it predates the records relating to Plaintiff's leg weakness. (Pl. Mem. 27.) In *Noerper*, the Court ordered remand because the RFC was determined based on state agency consultant opinions (i.e., that the plaintiff could stand or walk for 6 hours in an 8-hour workday) that predated certain medical treatment records and where there was "no reliable evidence providing a basis for the specific conclusion[.]" *Id.* at 746. Here, the ALJ adequately explained why each provider was provided specific weight and how their opinions were supported by medical evidence and other evidence in the record. *See supra* at 16–19. There is no need to further develop the record in this case. *See id.* ("[W]e do not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality.").

consistent with the record medical evidence, the weight provided by the ALJ to those opinions is affirmed.

### D. The ALJ's mental RFC is supported.

The ALJ examined the opinion from Dr. Karayusuf, the state psychological examiner, as well as notes from Plaintiff's mental health provider and primary care physician Dr. Yee when determining Plaintiff's mental RFC. (Tr. 33.) Dr. Karayusuf opined that Plaintiff "is able to understand, retain, and follow simple instructions. She is able to interact with fellow workers, supervisors and the public. She is able to maintain pace and persistence in the performance of simple, routine, repetitive, concrete, tangible tasks." (Tr. 432.) The ALJ explained that Dr. Karayusuf's opinion was persuasive because it was very thorough and consistent with conservative treatment. (Tr. 33, 67, 572, 574.) The ALJ also noted that Dr. Karayusuf is very familiar with evaluations applying disability guidelines. (Tr. 33–34.)

Plaintiff argues that the ALJ misrepresented the medical evidence that would have supported a greater mental RFC restriction. (Pl. Mem. 19.) Plaintiff also argues that Dr. Karayusuf's opinion should not be given as much weight because of the minimal record at the time of the evaluation. (Pl. Mem. 31.) Plaintiff's arguments, however, are misplaced because the ALJ actually found that Plaintiff required *more* behavioral and mental limitations than were suggested by Dr. Karayusuf. (Tr. 33.)[11] As in *Devante D. K.*,

---

[11]    For example, the ALJ observed how infrequently Plaintiff reported leaving the house and thus implemented additional limitations on Plaintiff's ability to interact with others in a job setting. (Tr. 33.)

the fact that the ALJ added additional limitations to the state agency psychological consultants proposed RFC indicated the ALJ had completed a review of the entire record. Civ. No. 20-423, 2021 WL 1140225, at *10 (D. Minn. Mar. 25, 2021). Further, the ALJ explained the consistency and supportability of Dr. Karayusuf's opinion and substantial evidence supported it as well, satisfying the statutory requirements and requiring deference.

Because the medical opinions were correctly weighed and the credibility determination adequately supported by the ALJ, the ALJ's decision must be affirmed.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 21) is **DENIED**; and

2.  Defendant's Motion for Summary Judgment (Doc. No. 23) is  **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: August 23, 2021          _s/ Becky R. Thorson_____
                               BECKY R. THORSON
                               United States Magistrate Judge